IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>       **Plaintiff,** )<br>)<br>   vs. )<br>)<br>**RUSSELL ANDERSON,** )<br>)<br>       **Defendant.** )<br>_____ ) | Cr. No. 96-00342-002 ACK |

### ORDER DENYING DEFENDANT'S MOTION TO TERMINATE OR REDUCE HIS TERM OF SUPERVISED RELEASE

On December 18, 2008, Defendant, Russell Anderson, filed a motion to terminate or reduce his term of supervised release ("Def. Mot."). On February 23, 2009, Plaintiff, the United States of America ("Government"), filed an opposition to the motion. On March 3, 2009, Defendant filed a response to the Government's opposition ("Def. Resp."). In addition, this Court has received correspondence from the United States Probation Office ("Probation Office") regarding Defendant's motion and response. For the reasons that follow, this Court denies Defendant's motion to terminate or reduce his term of supervised release.

### BACKGROUND

On March 21, 1996, the Government filed an indictment against, <u>inter alios</u>, Defendant and, on May 30, 1996, the Government filed a superseding indictment. Count 1 charged

Defendant with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Count 2 charged Defendant with transporting a person in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2421. Counts 4 and 5 charged Defendant with distribution of more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).

Defendant pled guilty to count 2 and was found guilty of counts 1, 4, and 5. On November 24 and 25, 1997, he was sentenced to a twelve-month term of imprisonment as to count 2 and a 121-month term as to counts 1, 4, and 5, with all terms to be served concurrently. Defendant was also sentenced to five years of supervised release. As part of his supervised release, Defendant was required to participate in a substance abuse program, which could include drug testing at the discretion and direction of the Probation Office.

On July 24, 2004, as part of a drug abuse treatment program and with good behavior, Defendant was released from prison to a halfway house. (Def. Mot. 1.) On January 24, 2005, Defendant was released from the halfway house. (Id.) The next day, he began his supervised release and reported to the Probation Office. (Id.)

**DISCUSSION**

This Court finds that a hearing in this matter is neither necessary nor appropriate. See Fed. R. Crim. P. 32.1(c); United States v. Nonahal, 338 F.3d 668, 669-71 (7th Cir. 2003) (holding that the district court did not err in declining to hold a hearing regarding the defendant's petition to modify the terms of his supervised release because, although Fed. R. Crim. P. 32.1(c) "requires the court to hold a hearing, with exceptions, 'before modifying the conditions of probation or supervised release,'" the rule "does not compel the court to hold a hearing before refusing a request for modification" (quoting Fed. R. Crim. P. 32.1(c)) (emphasis in original)), followed in United States v. Insaulgarat, 280 Fed. Appx. 367, 368 (5th Cir. 2008) (unpublished opinion) and United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (unpublished opinion).

Defendant argues that his supervised release should be terminated or modified pursuant to 18 U.S.C. § 3583(e). (Def. Mot. 3.) Under the statute, a court may, after considering certain factors set forth in 18 U.S.C. § 3553(a), "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In addition, the "court may

modify both the length and terms of supervised release at any time before the term of supervised release has expired." United States v. Behnezhad, 907 F.2d 896, 898 (9th Cir. 1990) (citing 18 U.S.C. § 3583(e)(2)).  The relevant factors under 18 U.S.C. § 3553(a) are:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence; (3) protection of the public; (4) the need to provide the defendant with educational, vocational training, medical care, or other rehabilitation; (5) the sentence and sentencing range established for the category of defendant; (6) any pertinent policy statement by the United States Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.  See 18 U.S.C. §§ 3583(e), 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

     The purpose of 18 U.S.C. § 3583(e) is to provide the "'district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances.'" United States v. Miller, 205 F.3d 1098, 1101 (9th Cir. 2000) (quoting United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997)).  On occasion, "'changed circumstances . . . will render a previously

imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).'" Id. (quoting Lussier, 104 F.3d at 36).  One such changed circumstance arises when the defendant has engaged in "'exceptionally good behavior.'"  Id. (quoting Lussier, 104 F.3d at 36); see also United States v. Smith, 219 Fed. Appx. 666, 668 (9th Cir. 2007) (unpublished opinion) (relying on Lussier, 104 F.3d at 36, for the proposition that early termination is "reserved for rare cases of 'exceptionally good behavior'").[1]  When a defendant moves to terminate his supervised release, he bears the burden of demonstrating that such a course of action is justified.  See United States v. Webber, 451 F.3d 552, 559 n.9 (9th Cir. 2006).

In this case, Defendant's principal argument is, in effect, that he has been on exceptionally good behavior and that early termination is therefore warranted.  (Def. Mot. 3-5; Def. Resp. 1-2.)  It appears that, while incarcerated, Defendant participated in several educational and self-development programs.  First, Defendant participated in parenting and domestic violence courses, job training courses, and college courses.  (Def. Mot. 2.)  He excelled in his course work.  (Id.)  Second, Defendant completed a twelve-week counseling course and

---

[1] Pursuant to U.S. Ct. of App. 9th Cir. Rule 36-3, this Court does not rely on Smith as precedent, but it does find the opinion illustrative.

thereafter assisted in counseling at-risk youth.  (Id.)  Third, Defendant participated in a Toastmaster's program, earning the designation of "Competent Toastmaster" and serving as the club's vice-president and president.  (Id.)  Fourth, he served as the executive vice-president of his correctional institution's chapter of the NAACP.  (Id.)  Fifth, Defendant assisted in founding and organizing an annual health fair and in organizing donation drives for the victims of Columbine High School.  (Id.)  Sixth, he tutored many inmates to help them work through GED programs and taught adult continuing education courses.  (Id.)  Finally, Defendant participated in a forty-hour drug prevention program and an extensive 500-hour residential drug abuse program.  (Id. at 3.)

On July 24, 2004, as part of the residential drug abuse program and with good behavior, Defendant was released from prison to a halfway house.  (Id. at 1.)  There, he participated in several substance abuse programs.  (Id. at 3.)  On January 24, 2005, Defendant was released from the halfway house.  (Id. at 1.)  Defendant has been employed since his release and is in the process of enrolling in a local community college program.  (Id. at 2-3.)  He has been tested for drugs randomly and has never tested positive for any illegal substances.  (Id. at 3.)  Defendant had no previous felony convictions prior to this case and has paid all imposed fines and court assessments.  (Id.)

Still, he admits that his supervised release has only been "relatively problem free." (Id. (emphasis added).) The Probation Office reports that Defendant has had difficulty complying with some technical conditions of supervision, such as timely submitting monthly supervision reports, financial documentation evidencing his monthly business income, and proof of state and federal tax filings. Upon reviewing Defendant's 2006 and 2007 state and federal tax returns, the office is concerned with his tax liability for those years. It further explains that Defendant is a sole proprietor of a business, but has not shown documentary evidence that he is compliant with paying his general excise taxes for 2005 through 2008. In addition to its expressing its concerns regarding the reporting issues, the Probation Office notes that Defendant has moved to three different residences within the last year. The office believes that the relocations suggest that Defendant's financial circumstances are unstable or uncertain. The office explains that, because Defendant's offenses were likely for financial profit and in view of his current financial and personal situation, he continues to pose a risk to reoffend for financial gain. The Probation Office therefore provides a recommendation against an early termination of supervision.

This Court agrees with the Probation Office and the Government that early termination of supervised release is

unwarranted under the circumstances.  Although Defendant should be commended for his positive efforts towards rehabilitation and reintegration into society, it does not appear that Defendant has been on "'exceptionally good behavior.'"  See Miller, 205 F.3d at 1101 (quoting Lussier, 104 F.3d at 36).[2]  This Court has considered the relevant factors set forth in 18 U.S.C. § 3553(a), especially the nature and circumstances of Defendant's offenses, Defendant's characteristics, deterrence, and the protection of the public.  See 18 U.S.C. § 3583(e).  After evaluating those factors, as well as Defendant's conduct and the interest of

---

[2] Defendant also points out that, under the amended guidelines for offenses involving cocaine base, the applicable sentencing range would have been lower for his offenses in counts 1, 4, and 5 had he been sentenced under those guidelines.  See (Def. Mot. 4; Def. Resp. 2); U.S. Sentencing Guidelines Manual §§ 1B1.10(a)-(c), cmt. 4(B), 2D1.1 cmt. 10(D) (2008); U.S. Sentencing Guidelines Manual App. C, Amends. 706, 711, 713.  U.S. Sentencing Guidelines Manual § 1B1.10 cmt. 4(B) indicates that, if it would have been appropriate to sentence Defendant to a lesser sentence under the amended guidelines, this Court may take that into consideration in deciding his request for supervised release.  This Court finds that, even if it would have been appropriate to impose a lesser sentence under the amended guidelines, that consideration is outweighed by the fact that Defendant has not shown exceptionally good behavior.  As the Ninth Circuit has suggested, early termination is "reserved for rare cases of 'exceptionally good behavior.'"  See Smith, 219 Fed. Appx. at 668 (quoting Lussier, 104 F.3d at 36)); see also U.S. Sentencing Guidelines Manual § 1B1.10 cmt. 4(B) (explaining that, even if a court finds that a reduced sentence would have been appropriate, the court, in deciding a motion for early termination, should "take into account the totality of the circumstances relevant to a decision to terminate supervised release").

justice, this Court denies Defendant's motion to terminate or reduce his term of supervised release.  See id.

## CONCLUSION

In light of the foregoing, this Court denies Defendant's motion to terminate or reduce his term of supervised release.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, March 27, 2009.



_____
Alan C. Kay
Sr. United States District Judge

United States v. Anderson, Cr. No. 96-00342-002 ACK:  Order Denying Defendant's Motion to Terminate or Reduce His Term of Supervised Release